CECIL BARRET et al. Exrs. vs. BEREA COLLEGE et al.

APRIL 30, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1) Wills. Powers of Appointment. Exercise of Power.

Introductory clause of will was as follows: "Be it known that I, do hereby make publish and declare my last will to be . . . intending hereby to dispose of all my property and estate (now or hereafter acquired) and all property over which I have any power of appointment or disposition whatever." After specific and pecuniary legacies and devises, residuary clause gave "all the rest residue and remainder of my estate of every kind and description and howsoever by me acquired" &c. The will provided that all legacy inheritance and transfer taxes should be paid out of the estate.

A deed of trust executed prior to the will by testatrix then a resident of a foreign state, provided that the income should be paid to her for life and on her death the corpus to be transferred to such persons as she by will should direct. Testatrix subsequently became a resident of this State.

At death, the personalty exclusive of that over which testatrix had power of appointment was insufficient to pay all of the legacies taxes and administration expenses.

On the questions whether the power of appointment was exercised by the will in favor of the executors and if the trust property passed to them for the benefit of the estate of testatrix or was the power exercised exclusively in favor of the residuary legatees so that it passed directly to them:—

Held, that it being admitted that testatrix had executed the power, the determination of the precise means of execution was to be made by interpretation of the will, and the intention of testatrix would govern.

Held, that the power was exercised by the introductory clause and other parts of the will and not by the residuary clause, and was so executed in favor of the executors for the benefit of and to be administered as a part of the estate of testatrix.

(2) Powers. Conflict of Laws.

Where the law of the domicile of the donor of a power differs from that of the donee, the law of the domicile of the donor governs the execution by will of the power of appointment.

BILL IN EQUITY for instructions.

STEARNS, J. This is a bill in equity for instructions, brought by complainants as executors of the will of Virginia Barret Gibbs, late of Newport and also in their capacity as trustees under a deed of trust made by said Virginia Barret Gibbs. The respondents are the legatees and beneficiaries

under the will. The cause being ready for hearing for final decree was certified to this court. (G. L. 1923, C. 339, s. 35.)

The facts are not in dispute. Testatrix, a resident of Newport in this State, died January 28, 1926. Her will dated February 22, 1913, with a codicil dated February 12, 1921, was duly admitted to probate in Newport and complainants were appointed and have qualified as executors.

The introductory clause of the will is as follows: "To all people to whom these presents shall come, be it known, that I, Virginia Barret Gibbs, of the City and County of Newport and State of Rhode Island, do hereby make, publish and declare my last will and testament to be, as follows: intending hereby to dispose of all my property and estate (now or hereafter acquired) and all property over which I have any power of appointment or disposition whatever, viz.:"

The first clause directs the executors to pay all debts, funeral expenses and obligations of every kind as soon as possible. Then, after disposing of her real estate, jewelry and furniture, testatrix gave to the complainants, $250,000 in trust for Lily Brown, her grandniece, for life and thereafter to her issue with gifts over on failure, and $150,000 to Cecil Barret, her nephew, together with $100,000 in trust for said Barret for life and thereafter to his issue with gifts over on failure; she then gave some thirty legacies to relations, charities and employees and disposed of the residue of her estate in the following language: "Twelfth: All the rest, residue and remainder of my estate of every kind and description, whether real, personal, or mixed, and wherever situated and whensoever or howsoever by me acquired, including all legacies that may lapse or fall into the residue, I give, devise and bequeath as follows:" and divided the same among various charities and individuals; certain changes in the residuary legatees were made in the codicil whereby the residue was divided among five different charities and five persons named therein; a number of these residuary legatees also received specific bequests in the will.

By the Eleventh clause of the codicil it was provided that all legacy, inheritance or transfer taxes should be paid by the executors out of the estate of testatrix, as a general expense of administration.

The deed of trust was executed December 24, 1866, by Virginia Barret Gibbs, then unmarried and a resident of Kentucky, and conveyed to trustees, residents of Kentucky, five hundred bonds of $1000 each of the L. & N. R. R. Co. maturing at different times up to January, 1877.. The purpose of the deed of trust as declared therein, was to secure to the maker the income and increase of said bonds free from the control of any husband she might thereafter have.

The trustees, after paying any taxes on the trust property, were directed to pay the residue of the income to the maker during her life. At her death the trust was to terminate, the trustees were then directed to transfer the bonds to any child or children, or their descendants, if any, living at her death and if she should die without child or children or their descendants then living, to such persons as she by her last will should direct; and in the event of her failure to exercise her power of appointment, at her decease, the bonds were to be transferred to such of her collateral kindred living at that time as would have taken under the laws of descent of the state of Kentucky. The trustees or their successors were empowered to collect the bonds as they fell due, and with the written consent of the maker to invest the proceeds in other bonds or stocks, to sell the same and hold the proceeds and new securities under the same trusts. The complainants, the successors of the original trustees, were appointed trustees, the one in 1905, the other in 1910, by the Circuit Court of Kentucky.

Virginia Barret Gibbs married after the creation of the trust. She never had any children. About 1880 she became a resident of Newport, where she continued to reside until her death. Her husband predeceased her. Her only heirs are her nephew and her grandniece.

The value of her personal property when the will was executed was $390,000, at the time the codicil was executed $380,000 and at her death $887,000. The value of the trust estate in 1926 was $518,000. At the time of the death of testatrix the personalty, exclusive of that over which she had the power of appointment, was sufficient to pay all but $100,000 of the legacies, taxes and administration expenses. The two funds were kept by complainant Barret, who managed both in separate banks, and the income of each was paid to testatrix by separate checks.

Complainants and certain respondents claim that it was the intention of testatrix by the use in her will of the introductory clause and by the general scheme of the will, to execute the power in favor of said executors and that the personalty subject to said power should be blended with the personalty which belonged to testatrix absolutely, to be administered and applied in accordance with the terms of the will to the payment of debts, administration expenses and legacies and the balance remaining to be paid into the residuary estate.

Other respondents claim that the power was exercised only by the residuary clause of the will and that the trust funds should be held to pass exclusively to the residuary legatees.

The questions with regard to which instructions are sought are:

1. Is the power of appointment exercised by the will in favor of the executors and does the trust property pass to them for the benefit of the estate of testatrix and to be administered as part thereof, or is the power exercised exclusively in favor of the residuary legatees so that it passes directly to them?

2. If the trust property passes directly to the residuary legatees, is it subject to the payment of expenses of administration, inheritance transfer, legacy and Federal estate taxes?

(1) All of the parties agree that the power was executed by the will. The only question is, how was it executed; was it by operation of the residuary clause or without reference to that clause?

General Laws, 1923, Chapter 298, Section 9 is as follows: "A general devise of the real estate of the testator, or of the real estate of the testator in any place or in the occupation of any person mentioned in his will, or otherwise described in a general manner, shall be construed to include any real estate or any real estate to which such description shall extend, as the case may be, which he may have the power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will; and in like manner a bequest of the personal estate of the testator or any bequest of personal property described in a general manner, shall be construed to include any personal estate or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will." This statutory provision first appears in General Laws 1896, Chapter 203, Section 9. It is similar to the Kentucky statute. (Gen. Stats. Ky. C. 113, s. 22.)

(2) The appointor is the instrument of the donor of the power and the appointee takes under the original will or instrument which creates the trust and not from the donee of the power. *Cotting* v. *De Sartiges*, 17 R. I. 668. The rule is generally held to be that when the law of the donor's domicile differs from that of the donee, the law of the domicile of the donor governs the execution by will, of a power of appointment. *R. I. Hos. Trs. Co.* v. *Dunnell*, 34 R. I. 394.

In *Harlow* v. *Duryea*, 42 R. I. 234, an annuity in trust was created by a contract between A., then domiciled in Massachusetts, and an insurance company located and incorporated in that state. By the terms of the trust the

company agreed to invest $25,000 paid to it by A. and to pay an annuity to A. for life and after her death to her son W. for life and after death of the survivor of A. and W., to C. for life, and upon the decease of the survivor of A., W. and C. to pay over the principal sum to the executors or administrators of said survivor in trust to be disposed of as W. might by will appoint, and in default of appointment to the heirs of C. Thereafter A. became a domiciled resident of Rhode Island and later died in this State leaving a will which was admitted to probate in this State. Prior to her death, W. died in the place of his domicile in Massachusetts, leaving a will which was duly probated in that state.

It was held that as the contract was made in Massachusetts and as the trust fund was in that state and was to be administered there by a corporation of said state and as both donor and donee of the power were then domiciled in said state, the donor must be presumed to have intended that the power would be exercised in accordance with the law of that state; that in the circumstances the question of the exercise of the power was to be determined by the law of Massachusetts, not by the law of this state and that the subsequent change of donor's domicile did not effect in any way the construction of the instrument which created the power; that the rights of an appointee are to be sought in the construction of the instrument which creates the power; if that instrument be a will, as to personalty at least, those rights are determined by the law of the testator's domicile at the time of his death, at which time the instrument becomes effective. In the present case as donor and donee are the same person, no question arises because of a difference in their domiciles at the time of the execution of the power. All of the personalty disposed of by the will and by the exercise of the power is received by the beneficiaries from the same person. When the will was made, all of this personalty in effect really belonged to testatrix as she had the beneficial interest for life in the trust property with the power of disposition on her death. As the law of

Kentucky and this State are alike, there is no question of a conflict of laws. As it is admitted that Mrs. Gibbs has executed the power, the determination of the precise means of execution is to be made by interpretation of the will. The intention of the testatrix governs. The testatrix begins her will by declaring it to be her intention to dispose of all of her property whenever acquired and all property over which she had any power of appointment. She had one power of appointment. The language of the introductory clause is comprehensive and when considered with the rest of the will irresistibly leads to the conclusion that testatrix intended to deal with her personal property in a mass, both that which she owned absolutely and that over which she had a power of appointment. Considering the structure of the will and the codicil, and the particular care of testatrix in making provision for her relations, friends and those to whom she felt under some obligation, it is we think clear that the disposition of the residuary estate was a subordinate matter in the mind of the testatrix. This conclusion is strengthened by the fact that her property without including therein the property subject to the power, was insufficient to provide for the specific bequests. There is no indication in the will that testatrix intended the residuary legatees to benefit at the expense of the specific legatees and the introductory clause was unnecessary if it was her intention that the residuary clause should be an execution of the power.

We decide that the power was exercised by the introductory clause and other parts of the will and not by the residuary clause. All parts of the will thus have a meaning and are effective in accomplishing the intention of testatrix. *Hurlstone* v. *Ashton*, 11 Jur. (N. S.) 725, cited by respondents and relied upon in support of their contention is not applicable. In that case a testator by his will gave £2800 consols to trustees, in trust for A. for life and after the decease of A. for her issue, but if A. died without issue then in trust for such persons as A. should by will or deed appoint. A.

died a spinster, leaving a will by which she gave various specific and pecuniary legacies, but the will did not contain a residuary clause or any reference to the power. The only question raised was, whether the will of A., if her assets proved insufficient, operated as an execution of the power. It was held that a bequest of £400 Indian Bonds made in the will could not be held to be an appointment of the £2800 consols. In the present case the trust was not restricted to specified securities but was intended to attach to any investments and the proceeds thereof, sanctioned by Mrs. Gibbs.

We answer the first question, that the power was executed in favor of the executors for the benefit of and to be administered as a part of the estate of testatrix.

As the trust property does not pass directly to the residuary legatees, no answer is required to the second question.

The parties may present hereafter form of decree.

*Sheffield & Harvey*, for complainants.

*Theodore Francis Green, Horatio R. Rogers*, for certain respondents.

*Burdick, Corcoran & Peckham, Edward J. Corcoran*, for Berea College *et al.*